STEIN v. GREENEBAUM.  (No. 7558.)

(Court of Civil Appeals of Texas. Galveston. April 26, 1918. Dissenting Opinion, April 30, 1918.)

1. MALICIOUS PROSECUTION ⬤⟾71(2) — PROBABLE CAUSE—QUESTION FOR JURY.

In an action for malicious prosecution by one partner against another, the charge against plaintiff having been that he was guilty of theft of partnership property by bailee, question of probable cause *held* for the jury.

2. MALICIOUS PROSECUTION ⬤⟾22 — ACTING ON LEGAL ADVICE.

Where defendant, in suit for malicious prosecution, before signing the complaint against plaintiff, in good faith made a full, fair, and complete statement of the material facts known to him to the county attorney, and thereafter acted on such official's advice, he had an adequate defense to the suit for malicious prosecution.

3. MALICIOUS PROSECUTION ⬤⟾71(4)—ADVICE OF COUNSEL—GOOD FAITH—QUESTION FOR JURY.

In suit for malicious prosecution by one partner against another, the charge against plaintiff having been theft by bailee, the issue of defendant partner's good faith in placing the facts before the county attorney before making complaint *held* for the jury.

4. MALICIOUS PROSECUTION ⬤⟾64(1) — DAMAGES—SUFFICIENCY OF EVIDENCE.

In suit for malicious prosecution by one partner against another, plaintiff having been charged with theft by bailee, evidence on the question of damages *held* to furnish sufficient basis for recovery.

5. DAMAGES ⬤⟾49—MENTAL SUFFERING.

As a general rule, mental suffering, unaccompanied by actual injury to person or property, affords no ground for an action, except where the wrong complained of is a willful one, intended by the wrongdoer to wound the feelings and produce mental suffering, or one from which that result should be reasonably anticipated as a natural consequence.

Lane, J., dissenting.

Appeal from District Court, Ft. Bend County; Samuel J. Styles, Judge.

Action by Max Stein against H. Greenebaum. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Clarence I. McFarlane and W. I. McFarlane, both of Richmond, H. O. Schulz and F. X. Joerger, both of Rosenberg, and Mathis, Teague & Mathis, of Brenham, for appellant. W. T. Bagby, of Hallettsville, D. R. Pearson, of Richmond, and Fly & Ragsdale, of Victoria, for appellee.

GRAVES, J. Laying the amounts thereof at $10,000 actual and $15,000 exemplary, Max Stein, appellant, sued H. Greenebaum, appellee in the court below for damages for malicious prosecution. In general substance, and effect his petition alleged that Greenebaum falsely, maliciously, and without reasonable or probable cause, made and swore to a complaint in writing before W. L. Davidson, county attorney of Ft. Bend county, Tex., charging Stein with the theft of three mules by bailee; that he was arrested under a warrant issued upon this complaint, and some days after giving bond for his appearance thereat was given an examining trial on such charge before the justice of the peace at Richmond, Tex.; that this trial resulted in his being discharged; and that the grand jury of Ft. Bend county subsequently investigated the charge and failed to find a bill of indictment against him.

Appellee, Greenebaum, in reply, after demurrer and denial, alike general, specially pleaded that he had, prior to making and filing the complaint, consulted and made a full, complete, and fair statement of all the facts known to him in good faith to his own attorneys, who advised him that, under such statement, appellant was guilty of theft by bailee; that thereafter, and still before making and filing the complaint, he and his attorneys conferred with Hon. W. L. Davidson, county attorney of Ft. Bend county, and they together in good faith advised him of all the facts known to appellee concerning the charge, whereupon he was advised by the county attorney that appellant had committed the offense of theft by bailee, and he then, acting upon the advice at that time given him, made and signed the complaint against appellant so charging.

By supplemental pleadings of both parties, issues were joined upon the matters thus pleaded; appellant further alleging that, if the county attorney did advise making of the complaint, he had been induced to do so by false and fraudulent representations and concealment of the true facts in the case by appellee. At the close of the evidence, upon motion of appellee, the court peremptorily instructed the jury to return a verdict for him, which was done, and judgment entered thereon accordingly, from which appellant prosecutes this appeal.

Such further statement as is deemed essential will be made in what follows:

With the pleadings as above outlined, the single question presented for this court's

determination is: Did the evidence disclose such controverted issues of fact as should have been submitted to the jury? Since all of appellant's assignments merely present this same general issue from different angles, it will be unnecessary to discuss each separately. The evidence is voluminous, and for the purposes of this judgment no attempt need be made to comprehensively digest it, but only so much as is thought sufficient to indicate the basis upon which this court's conclusions are grounded:

From 1911 to 1915 I. Rheinstrom, H. Greenebaum and Max Stein, under the firm name of Rheinstrom, Greenebaum & Max Stein, were partners in the horse and mule business at Rosenburg, Tex., under an agreement that the two first named should furnish Stein the stock and money needed for carrying on the business, while he would do the work, manage and conduct it, and, after expenses were deducted, any profits realized would be divided, one half to him and the other half to them. During the four years of its existence the firm, under Stein's management, did a large amount of business, estimated by him at about $100,000; its dissolution taking place about February, 1915. There seems to have been no general settlement, adjustment, or accounting of its affairs between its members, either during continuance of the business, or at the time of the dissolution.

I. Rheinstrom and H. Greenebaum also composed a separate firm at Hallettsville, Tex., which independently did business from there under the firm name of Rheinstrom & Greenebaum, in which Stein was not a member. Stein lived at Rosenberg, Ft. Bend county, Greenebaum at El Campo, Wharton county, and Rheinstrom at Hallettsville, Lavaca county.

The firm at Hallettsville kept there the books and accounts and preserved the record of the business done by the Rosenberg firm, the general course of dealings back and forth between the partners being substantially this: Whenever Rheinstrom & Greenebaum, of Hallettsville, furnished money or stock to Stein for the business at Rosenberg, they charged the Rosenberg firm with them on the books so kept, and whenever Stein, for the latter firm, sold any stock and remitted to the former at Hallettsville the proceeds thereof in money and notes, they likewise credited the Rosenberg firm therewith upon these books.

Stein maintained, however, and so testified, that such money and notes were not delivered to Rheinstrom & Greenebaum in settlement for the stock sold, but only to enable them to keep a record of all the notes sent to them for the firm of Rheinstrom, Greenebaum & Max Stein, and if the notes were not paid, or should happen to be lost, they were charged back to the Rosenberg firm, and any losses thereon were to be borne one half by himself and the other half by his two partners, according to the general terms of their association; in other words, that an inherent part of the partnership agreement was that the notes would thus be credited to his firm, and so kept track of, but would in reality remain the property of that firm until finally settled by the makers. This feature of the case will be recurred to later on.

Upon the dissolution of the firm in February, 1915, there was considerable difference between the claims of the parties as to which was indebted to the other; Stein claiming that the firm was indebted to him, and Rheinstrom & Greenebaum claiming that Stein was indebted to them. There was also considerable joint property undisposed of, and shortly after the firm quit business appellee, Greenebaum, in order to get jurisdiction for that purpose in Lavaca county, where his other partner, I. Rheinstrom, lived sued him and Max Stein in the district court of that county for an accounting and settlement of the partnership affairs of Rheinstrom, Greenebaum & Max Stein. Auditors were appointed by the court to go over the partnership accounts, and filed their report in the fall of 1915, showing the firm to be indebted to Max Stein about $5,000.

The complaint against Stein was not filed until January 13, 1916; his examining trial and discharge following on February 1, 1916. Arising out of these general relationships recited, the particular transaction which formed the basis of the prosecution complained of was, as we understand it, in substance, as follows:

In the course of the partnership business Stein sold four mules to a Mr. West for $775, for which West gave his otherwise unsecured note with a Mr. Dvorak as indorser; Stein making the note payable to the firm of Rheinstrom, Greenebaum & Max Stein, and no lien upon the mules being retained therein. Stein sent this note to Rheinstrom & Greenebaum at Hallettsville, to keep a record of, and they, after indorsing the firm name of Rheinstrom, Greenebaum & Max Stein upon it, returned it to him with instructions to go sell it and get the cash for it. This he did by negotiating it to the Rosenberg State Bank; all the money therefor being received by Rheinstrom & Greenebaum. Appellee claimed, however, that the note had first been duly credited to the Rosenberg firm.

At or subsequent to maturity, Mr. Dvorak, the indorser, paid the bank $500 or $600 on the note, after which it brought suit against the maker and indorsers for the balance due. This balance was subsequently paid by Rheinstrom & Greenebaum, and amounted at the time they took it up to $298.55. The note thus came back again into their hands, and they then sent it to Rosenberg for settlement with West and Dvorak, through Mr. Joerger, according to the testimony for appellee, while Stein said it was through himself direct. At any rate, the note seems to have

been turned over to Stein and he effected the settlement by taking back three of the mules it had been originally given for. These are the three mules he was charged with having stolen. Subsequently he sold two of them to Foss Bros. for $265, $135 cash, and $130 in a note made payable to the firm of Rheinstrom, Greenebaum & Max Stein, keeping the third one in his own possession.

At this point it may be stated that the undisputed evidence showed the filing of the complaint, Stein's arrest and discharge upon an examining trial before the justice of the peace and the failure of the grand jury, after investigating the charge, to indict him.

[1] We think the court erred in taking the case from the jury, and mainly upon these considerations:

If the testimony of Max Stein as to the terms of the · partnership agreement was true, and in its vital feature it seems to us to have been well-nigh corroborated by the bookkeeper of his two associates, then the mules he was charged with having stolen were the property of his firm, or assets of their ·unsettled business, and as a member thereof he had the legal right either to sell or keep them in his possession. In such circumstances, it could not be said, nor do we understand appellee to so contend, that he would have had probable cause for making this complaint. His insistence is that, since Rheinstrom & Greenebaum paid the balance due on the West-Dvorak note to the Rosenberg State Bank, this note became their property, and that Stein had no interest therein, and for that reason the mules, having been taken in settlement of that note, or the balance due thereon, were the property of Rheinstrom & Greenebaum, and not the property of Rheinstrom, Greenebaum & Max Stein.

Upon the terms of the partnership and their conduct of the business under them, the general substance óf Stein's version is given in these extracts from his testimony:

"The firm of Rheinstrom & Greenebaum charged me with stock that was by them delivered to the firm of Rheinstrom, Greenebaum & Max Stein, and whenever I sent him (Rheinstrom & Greenebaum) cash and notes they were supposed to give me credit for it. The cash and notes received by the firm of Rheinstrom, Greenebaum & Max Stein for stock sold were not delivered to the firm of Rheinstrom & Greenebaum in settlement of such stock. I did not say that it was delivered in settlement of it. It was done to keep a track of all the notes. It was just to keep every note, and whenever these notes were collected and paid up they were supposed to give me credit for them. Yes; they were supposed to give me credit whenever the notes were settled. If I sent in $500 or $1,000, they would give me credit for it. They were supposed to keep a record of all the notes that were sent to them for Rheinstrom, Greenebaum & Max Stein, and, if the notes were not paid, they would be charged back to the firm. If a note was lost it was charged back, and each was to bear one-half of the loss." "If I sold a pair of mules for $600, and took $100 in cash and a note for $500, and delivered the note and money to Rheinstrom &

Greenebaum, they were supposed to give the firm of Rheinstrom, Greenebaum & Max Stein credit. If the note would not have been paid, I would be charged back with it. I was a partner to the note until the note was settled by the maker."

Concerning the same matter Mr. Tippett, the bookkeeper for Rheinstrom & Greenebaum at Hallettsville, testified:

"This stock was sent down here and sold to him, and he was charged with it; and when he sold it and sent the note back, he was credited with it. Every note, as soon as it was sent to our office, although payable to Rheinstrom, Greenebaum & Max Stein, became the property of Rheinstrom & Greenebaum, and the proceeds that were obtained from the sale of the notes belonged to Rheinstrom & Greenebaum. *But if a note, after being sold, was not paid, it was returned to us, and we had to take it up. We charged it back· to Mr. Stein. If Rheinstrom & Greenebaum had to take the note up, we charged it back to the account of Rheinstrom, Greenebaum & Max Stein.*"

As has been suggested from other parts of the record, these excerpts from the testimony of the two witnesses quoted disclose and emphasize the main difference in the positions of the parties to this litigation with reference to the ownership of the mules and the notes. Appellee himself does not seem to have testified upon the particular point, but has throughout the proceedings assumed the same attitude as this of his bookkeeper. Boiled down, the sum and substance of that contention is that, when the firm of Rheinstrom, Greenebaum & Max Stein sent the note in issue to Hallettsville and received credit for it upon the books of Rheinstrom & Greenebaum, according to the usual course of their mutual business in that regard, it was from that moment freed · from any interest of the Rosenberg firm in it, and became the absolute property of the Hallettsville firm to do with as the latter pleased. We think, if this were true at all, it could only be so technically, or as a mere matter of bookkeeping, and that, whatever may have been the status of the note during the time it was held by the bank, when it came back again into the hands of Rheinstrom & Greenebaum, it was placed for the balance due thereon exactly as it had been before the sale to the bank, and as between them and Stein, or Stein's firm, was subject to the actual terms of their partnership agreement. In that situation, those terms, even according to appellee's own bookkeeper, were· that the note was then charged back to Stein and his firm; that is, necessarily was considered the latter's property.

As we view the matter, conceding that, when first sent in to them, the full amount of the note had been credited by Rheinstrom & Greenebaum to Stein's firm, such credit did not, as between the three partners, if Stein's allegations and testimony be true, amount to an absolute sale of it to the former, and thus emancipate it from the agreed condition under which that credit was to be made; that is, that Stein's interest in it should not be extinguished until final pay-

ment of the note by its maker. In other words, if the terms of the partnership were what Stein said they were, and, of course, with that this court has nothing to do, the leaven of the understanding that his interest in all notes delivered to and so credited by his associates to his firm was not to pass out of them until final payment thereof by the makers would leaven the whole lump of the dealings between the three concerning any particular note, no matter what was done with it in the meantime.

While in the hands of the bank, indorsed as it was by Stein's firm, the note was undoubtedly a firm liability, notwithstanding the fact that the money for which it had been sold all went to Rheinstrom & Greenebaum; then, after the latter, in practical effect, took part of the same money, paid to the bank the balance due thereon, and, even under their own bookkeeper's statement, were due to charge that balance back to the account of Rheinstrom, Greenebaum & Max Stein, how can it be said that the note was not an asset of that firm as to the balance so to be charged? And it need not be repeated that if the note, or the mules for which it stood, did belong to the partnership, there was a consequent lack of probable cause for the criminal prosecution; to say the least of it, the facts were in controversy, the evidence was conflicting, and the question of probable cause should have been submitted to the jury. Glascow v. Owen, 69 Tex. 169, 6 S. W. 527; Porter v. Martyn, 32 S. W. 732; Sebastian v. Cheney, 86 Tex. 497, 25 S. W. 691; Equitable Life Assurance Society v. Lester, 110 S. W. 499; Jacobs v. Crum, 62 Tex. 408; 25 Cyc. pp. 29 and 31; Ramsey v. Arrott, 64 Tex. 323.

[2] Leaving the question of the ownership of the note, we recur to the main defense interposed by appellee—that he acted upon advice given him by the county attorney. It is conceded by appellant that this would have been an adequate defense, if appellee had in good faith first made a full, fair, and complete statement of all the material facts known to him at the time to the county attorney, and thereafter had acted upon that official's advice based thereon; indeed, such seems to be the well-settled law. Lenoir v. Marlin, 10 Tex. Civ. App. 376, 30 S. W. 566; Burgess v. Singer Mfg. Co., 30 S. W. 1110; Brady v. Georgia Home Ins. Co., 24 Tex. Civ. App. 464, 59 S. W. 914; Rogers v. Mullins, 26 Tex. Civ. App. 250, 63 S. W. 897.

[3] The question then is: What was done in this instance? The appellee himself testified:

"I did not tell Maj. Davidson that I had lawyers here to bring a civil suit to take the mules. I did not tell him anything about any partnership arrangements I had with Max Stein. I did not tell him that a suit had been brought for a partnership accounting." "I didn't tell him anything about the auditor's report. I didn't tell him that the auditor's report showed that I was indebted to Max Stein. I did not tell him about that." "The auditors made a report, and I heard Mr. Rheinstrom say that their auditor had said that we were indebted, to Max Stein in the sum of $2,000 or $2,500, possibly $3,500. I heard that before I filed the complaint against him. * * * I didn't go to Hallettsville and look over the auditor's report, to see whether or not it was correct, or to see whether or not I owed Max Stein. I filed the complaint against him, because I was mad at him. I never talked to a living soul about it, except Mr. Ragsdale, before filing the complaint. I did not talk to anybody about it, but Mr. Ragsdale, before I filed the complaint." "I came to Rosenberg and Ft. Bend county with the intention to file a complaint against him. My intention, before I came to Rosenberg, was to file a complaint if I didn't get the mules, and I didn't get them. I could not get them by suing for them."

Mr. Bagby, appellee's attorney, testified: "I did not tell Maj. Davidson the details of the conversation I had with Max Stein in Houston. I told Maj. Davidson only that Max Stein had refused to tell what disposition he had made of the mules—of the proceeds of the mules. He would never tell me to whom he had sold the mules. I did not tell Maj. Davidson that same detailed statement that I told this jury. I told Maj. Davidson only that Max Stein had refused to disclose to whom he had sold the mules, and what disposition he had made of them; that is the only statement I made to him." "I knew something about the audit. I did not tell him that this note had gone into the audit of the partnership matters of that firm of Rheinstrom, Greenebaum & Max Stein. I do know now that the note went into this audit. I don't know that I knew it at that time, but I presume I did. I did not tell him that. I did not tell him that the audit showed that the firm owed Max Stein several thousand dollars, because if that note was in there, regardless of who put it in there, as a matter of law it did not belong there, in my judgment, and it did not concern this transaction, whether it was or was not in there. I did not tell Maj. Davidson about that. I told him that Max Stein refused to deliver the mules. Max told me in Houston that he did not have any interest in the mules. He claimed he was going to keep the exchange (meaning the proceeds for which Stein claimed to have sold the mules) until the settlement of the suit. I did not tell Major Davidson this. Max Stein claimed to me he was going to keep the exchange until the termination of the suit at Hallettsville between Rheinstrom & Greenebaum and himself, and in that connection I told him that they were liable for them, and, if the mules were not theirs, they were liable to him for whatever amount it was, and he said that that was the reason he was holding it. I did not tell Maj. Davidson about the pending suit. Max Stein did not claim the title. I did not tell Maj. Davidson that Max Stein said he was holding the property until the termination of the suit. I told him he had converted the mules and had declined to tell where the mules were or the proceeds thereof."

So that, if there was an issue or could have been two ways of thinking by reasonable minds, over whether or not the West and Dvorak note was either the property or part of the unsettled assets of the Rosenberg firm, confessedly the county attorney was not given a full and fair statement of all the material facts, because both appellee and his attorney thus admitted that they told him nothing about any of the partnership arrangements with Stein, nor even that a civil suit had been brought for an accounting thereof, much less that the audit,

already for some months on file therein showed his firm then owing Stein about $5,-000, and that, when the mules had been demanded of Stein, he said he was holding them until the termination and settlement of that suit; indeed, although confessing their previous knowledge of all the facts mentioned, they further testified that the sum and substance of what they really told Maj. Davidson, the county attorney, was that Stein had no interest in the mules, but had converted them to his own use and benefit, and declined to tell where they or the proceeds were. Manifestly, in such circumstances as these, under the authorities cited, the advice of the county attorney would not afford immunity, and the issue of appellee's good faith, under all the facts, should have gone to the jury.

[4, 5] Upon the question of damages, we think the evidence furnished sufficient basis for a recovery. While as a general rule mental suffering, unaccompanied by actual injury to person or property, affords no ground for an action, there are certain well-recognized exceptions, as where the wrong complained of is a willful one, intended by the wrongdoer to wound the feelings and produce mental suffering, or from which that result should be reasonably anticipated as a natural consequence. The authorities upon this question were reviewed and differentiated by this court in the recent case of Sisler v. Mistrot, 192 S. W. 565. See, also, Davidson v. Lee, 139 S. W. 907; Leach v. Leach, 11 Tex. Civ. App. 699, 33 S. W. 703; Carter v. Oster, 134 Mo. App. 146, 112 S. W. 995.

From the conclusions stated, it follows that the judgment must be reversed, and the cause remanded for another trial, and that order has been entered. Mr. Associate Justice LANE dissents, and will himself write his views.

Reversed and remanded; Associate Justice LANE dissenting.

LANE, J. (dissenting). I am unable to agree with the majority of the court in their statement of the case, their fact findings, or the final conclusions reached by them. I shall therefore make a statement of the case as I understand it, and shall also present my findings of fact, which I think are supported by the undisputed evidence, and my reasons generally for my conclusion that the judgment of the trial court should be affirmed.

I. Rheinstrom and H. Greenebaum are parties composing the firm of Rheinstrom & Greenebaum, long engaged in the business of selling and trading horses and mules, with their principal place of business at Hallettsville, Lavaca county, Tex., hereinafter, for convenience and identity, called the "Hallettsville firm." This Hallettsville firm, some time in the year 1911, agreed to and did form a firm or copartnership with appellant, Max Stein, for the sale of horses and mules, with its place of business at Rosenberg, Ft. Bend county, Tex., said firm to be composed of the Hallettsville firm, as one party, and Max Stein, the other party, which is hereinafter called the "Rosenberg firm." The agreement by which the Rosenberg firm was established was substantially as follows:

The Hallettsville firm agreed to furnish the horses and mules for the Rosenberg firm, and Max Stein was to dispose of the same at a profit; each of the partners, the Hallettsville firm representing one, and Max Stein the other, was to receive one-half of the profits of the business. It was further agreed that the Hallettsville firm should employ a bookkeeper jointly for both firms, which it did in the person of the witness Tippett. It was agreed that, whenever the Hallettsville firm furnished horses and mules to the Rosenberg firm, said firm was to be charged with the value agreed upon between the two firms; that when said stock was sold by the Rosenberg firm the proceeds of such sale was to be sent to the Hallettsville firm, and the Rosenberg firm was to be credited for the amount of such proceeds, and the same became the property of the Hallettsville firm. If any portion of such proceeds were notes of the purchasers of said stock, the Rosenberg firm guaranteed the payment thereof, and if said notes or any part of them were not paid, and a loss was thereby sustained, such loss was to be charged back against the Rosenberg firm. During the existence of the Rosenberg firm, Max Stein, for said firm, received from the Hallettsville firm certain mules, for which the Rosenberg firm was charged on its books their agreed value. Thereafter he sold four of these mules to a Mr. West for a note of $775, with Mr. Dvorak as surety for West. This note, indorsed by the Rosenberg firm, was sent to the Hallettsville firm, and the Rosenberg firm was credited with the face value of the same. After the Hallettsville firm had received this note, it was by this firm sent to Max Stein, of the Rosenberg firm, with instructions to sell it to the Rosenberg Bank. The note as indorsed was sold to said bank for $775, and the proceeds sent to the Hallettsville firm. After the Rosenberg Bank became the owner of the note, West, the maker, paid $500 or $600 thereon to the Rosenberg Bank, but having failed to pay the balance, the bank called on the Rosenberg firm for payment of such balance. Mr. Rheinstrom, of the Hallettsville firm, instructed the bank to sue the maker and his surety on the note, and make the Rosenberg firm party to the suit, so that judgment might be taken in favor of said firm for any sum it might have to pay by reason of its indorsement over against West and Dvorak. (See statement of facts, bottom of page 52). After these proceedings the bank drew a draft on the Hallettsville firm for $298, which

included the balance due on the principal of the note, interest due thereon at the time of the suit, $25 attorney's fees provided- for in the note, and $10 costs of suit. This draft was paid by the Hallettsville firm, and the original note withdrawn from the court and sent to said last-named firm. After the Hallettsville firm had paid the Rosenberg Bank the amount of the judgment and costs of suit, it instructed either Stein or one Joerger, of Rosenberg, to try to get a settlement out of West and Dvorak, the makers of the note. Stein went to see these parties, and they agreed that, if Stein would deliver to them the note, they would deliver to him three of the mules. Stein notified the Hallettsville firm of this proposition, and in due time the note was sent to either Stein or Joerger, and Stein delivered the same to West and got the mules. The appellee, Greenebaum, contends that the mules were the property of the Hallettsville firm, and Stein, appellant, contends that they were the property of the Rosenberg firm, at the time they were taken back from West.

The undisputed evidence shows that the note was sent to the Hallettsville firm under the agreement of the two firms, and that the Rosenberg firm received credit therefor; thus it became the property of the Hallettsville firm. The undisputed evidence also shows that this note was later sold to the Rosenberg Bank and beyond question became its property, and that neither it nor any part thereof was ever retransferred to or in any manner became the property of the Rosenberg firm. The undisputed evidence of the bookkeeper, Tippett, is that after the Hallettsville firm received the note from Stein he entered a credit, but that after the Hallettsville firm had paid the $298 to the bank no charge or credit of any kind was made against the Rosenberg firm.

Without going into further details, we have, from what has already been stated, shown by the undisputed facts, first, that the note in question was credited to the account of the Rosenberg firm, and as a consequence was charged to the Hallettsville firm, thus reducing the debt of the Rosenberg firm to the Hallettsville firm in the sum of $775; second, that neither the note, nor any part thereof, was ever charged back to said Rosenberg firm; third, that said note was sold to the Rosenberg Bank by Stein at the request of the Hallettsville firm, to whom it had been transferred, for the sum of $775, and of course became the property of the bank, fourth, that, after the bank had taken judgment on the note against the makers of the note and the indorser, the Rosenberg firm, and after the Rosenberg firm had taken judgment over against the makers for such sum as it might be compelled to pay the bank, the Hallettsville firm paid the bank its money for said judgment, and became subrogated to the rights of the bank; fifth,

that the Rosenberg firm was never charged with any portion of the sum paid by the Hallettsville firm to the Rosenberg Bank; sixth, that Stein took the mules involved in this controversy in payment of the judgment owned by the Hallettsville firm, and disposed of them without the consent and over the protest of their owners.

If I am sustained by the undisputed evidence in the above conclusion, of course it follows that Max Stein was in possession of the mules as bailee for the Hallettsville firm when he took them from West, and not as owner or part owner thereof. The contention that he had an interest in them, because his firm had indorsed the note in question, is so plainly untenable that it will not admit of an extended discussion. Suppose A. owned a note given for mules by B., and A. was to indorse and sell the same to a bank, and the bank were to pay A. for the note or give him credit on its books for the value of the note, and thereafter, on failure of B. to pay said note, the bank sued B. and the indorser, A., thereon and took judgment thereon against both A. and B., and then A. took judgment over against the maker, B., and thereafter, by instructions from the bank, A. took the mules back in payment of the judgment, to whom would the mules belong? It seems to me that but one answer could be made, and that is that the mules were the property of the bank, and that A. was holding them as bailee for the bank. Certainly in such case A. would own no interest in the mules by reason of his indorsement of the note which he had sold to the bank. If A. was credited with the amount of the note on the books of the bank, such amount stood as a credit to A. and it would be absurd to say, as is said in the majority opinion, that such credit was "only a mere matter of bookkeeping." The bank, in such case, would have the option to call upon the indorsers for payment of the note when the maker failed to pay the same; but it was not bound to do so, and if it saw proper to take the mules, or have them taken, in payment and full satisfaction of its judgment, the mules would be its property, and the indorser, A., would own no interest whatever therein. The same principle is applicable in the present case. Technically Stein, in disposing of the mules taken from West, without the consent and over the protest of the Hallettsville firm, was guilty of the offense of theft by bailee. Greenebaum had been so told by Mr. Bagby and Mr. Ragsdale, two highly honorable men and lawyers of known ability in their profession. He had also been so told by Hon. W. L. Davidson, county attorney of Ft. Bend county, after said county attorney had been fully advised of all the matters directly material and relative to the question of the guilt or innocence of Stein, and certainly under these circumstances Greenebaum had reasonable grounds for

making the affidavit charging Stein with theft as bailee, and therefore I do not think the trial court erred in instructing a verdict for appellee Greenebaum in this case.

It was not a necessary justification of Greenebaum that legal probable cause should, in fact, have existed. The question on this issue was, not whether Stein was actually guilty as charged, but whether Greenebaum had reasonable grounds, from the facts known to him and advice given him, to believe, and did actually believe, that Stein was thus guilty. McManus v. Wallis, 52 Tex. 546, 547. Where the undisputed evidence shows, as in this case, that the defendant had probable cause for instituting the prosecution against the plaintiff, the question as to whether at the time of the institution of the prosecution defendant was mad at the plaintiff becomes immaterial. I shall therefore not discuss the question of malice.

For the reasons given, as well as others apparent of record, I am unable to concur with the majority of the court in holding that the judgment of the trial court should be reversed, and the cause remanded.