## JOHN MOYLE *vs.* HORACE F. DRAKE.

Norfolk. Jan. 18. — Feb. 26, 1886. DEVENS & GARDNER, JJ., absent.

A discharge by a magistrate of a person arrested on a complaint is a sufficient termination of the case to support an action for malicious prosecution, even if the magistrate has only power to bind over or discharge the accused.

At the trial of an action for malicious prosecution, it appeared that the plaintiff had been arrested, on a complaint made by the defendant, for a wilful trespass by cutting down three hundred trees on the defendant's land. The evidence tended to show that the land was a brush pasture unenclosed by a fence; that the plaintiff, having a license to cut a footpath on the land of a third person, by mistake cut it on the defendant's land; that, at the most, only ten trees were cut; that the damage done did not exceed twenty-five cents; and that, before the complaint was made, the plaintiff, being informed by the defendant that the cutting was on his land, offered to pay the damages. *Held,* that there was evidence for the jury that the complaint was prosecuted without probable cause, and with malice.

TORT for malicious prosecution. Writ dated March 1, 1884. Trial in the Superior Court, before *Bacon*, J., who reported the case for the determination of this court, in substance as follows:

Drake, on August 25, 1883, made a complaint before a trial justice, charging Moyle with wilfully committing a trespass, on August 13, 1883, and unlawfully and wilfully cutting down, carrying away, and destroying three hundred trees, of the value of $30, of the property of Drake. Upon the warrant issued upon this complaint Moyle was arrested, and taken before J. C. Lane, trial justice, for examination. The record of the trial justice was as follows:

"Norfolk, ss. By virtue of the within warrant, the respondent is brought into court this first day of September, A. D. 1883, and the within complaint is read to him, and he being asked whether he is guilty or not guilty of the offence within charged

upon him, says that he is not guilty, and after due and full examination it is considered by me that he is not guilty of the offence charged against him. It is therefore ordered by said court that he be discharged."

Frederic Endicott testified that he was a surveyor and civil engineer; that he surveyed the premises where the alleged trespass had been committed, and produced a plan by which it appeared that the path which Moyle cut on the land of Drake was about five hundred feet in length. The damage caused by cutting the path was in the witness's opinion, ten or fifteen cents. The witness testified that he had examined the stumps from which the wood was cut; that there were three chestnut trees, the largest an inch and a quarter in diameter, six birches, the largest an inch and a quarter in diameter, one small branch of an oak tree, less than an inch in diameter, and a few small huckleberry and other bushes, and small limbs. On cross-examination the witness said he did not include in his estimate the value of any trees cut on Drake's land not on the line of the path. The attention of the witness was first called to the premises in September, 1884; at that time he examined the stumps.

It appeared from the deeds introduced at the trial, or was admitted by the parties, that Drake's land had been owned by one Barnabas D. Capen, who gave a bond for a deed to one Friend Drake, the defendant's father, who had formerly owned said premises, and had lived on them for many years. The interest in said estate which Friend Drake had was sold by his administrator by public auction, a few months before the trespass complained of, and the defendant obtained title by deeds from both said administrator and said Capen.

Moyle testified that he had lived several years, and now lived, a short distance southerly of the defendant's house in Sharon; that he was present at the auction sale, upon the premises of Drake, by the administrator, of the defendant's land, and was the second highest bidder therefor at said sale; that he was also the lessee of a lot called the Carpenter lot, lying northwesterly of Drake's lot; that he had used another path on Drake's land, somewhat nearer Drake's house, to get to and from the Carpenter lot, but had been forbidden by the defendant to use that path; that he then obtained a license from one A. G. Hixon to

cut a path through land of one Fanny Dixon, which lay between Drake's lot and the Carpenter lot, to go to and from the Carpenter lot; that in consequence of said license he cut the path, but in mistaking the defendant's boundary, he had cut the path, as he subsequently found, on the defendant's land, although he had supposed at the time that he was on Hixon's land, and that the defendant's line was several feet southerly of where he cut the path; that he had known the defendant's premises for some years, and thought the defendant's line commenced on the highway at a point southerly of the point where he began to cut on the plan, and ran back westerly about parallel with the path cut; that in pursuance of said license he went, on the afternoon of August 13, 1883, with a hired man, and cut the path, which was a footpath; that upon completing the cutting of the path, and on the same day the path was cut, Drake told him that he had cut the path on Drake's land; that he replied, " I think not, I had authority from Hixon to cut the path on his land, and I think I cut it on his land;" that Drake answered, " Well, you have cut it on my land;" and that the witness replied, " If I have, it is a mistake,.and I suppose I must stand the racket," meaning to pay the damages, " but I don't think I have." Moyle also testified that, the next morning, August 14, he called on Capen; that, in consequence of what Capen told him, he saw the defendant, and said to him, " I have seen Capen, and I find that a portion of the path is on your land, and I will pay you whatever the damages are, if you don't set them too high, and, if we cannot agree, I will pay whatever any two or three men say they are." To this Drake made no reply; that the witness asked Drake to show him where his line was, which Drake refused to do; that he had no further or other conversation with the defendant until his arrest and trial; that the damage in cutting the path was small, that it would not exceed twenty-five cents; that no trees were cut, only huckleberry brush and some sprouts; that there were no walls or fences designating the boundary.

On cross-examination Moyle said that he testified at the hearing before the trial justice that he cut only a part of the path on the defendant's land, and that he did not know that he had cut the whole path on the defendant's land until about a week before the trial in this court, when he went with the surveyor to run

out the line; that after the hearing before the trial justice, and after his discharge, he tendered Drake two dollars in payment of the civil damages caused by the trespass, which Drake accepted. There was a notice posted near Drake's house on said premises, near where the path was cut, forbidding trespassing.

Albert G. Hixon, a witness called by Moyle, testified that he was the agent for Fanny Dixon; that her lot was under his control; and that he gave Moyle permission to cut a path through his land. Upon cross-examination, the witness testified, " I gave Moyle permission to cut or trim a path, but no permission to cut trees; that Drake came to see him, and inquired if Moyle had permission from the witness to cut a path through his, the witness's land; that the witness told Drake he did give that permission to the plaintiff, and that this inquiry, the witness believed, was made before the hearing before the trial justice, — he could not tell whether it was before or after the criminal trial; that he was not there at that trial; that it might have been after, — might have been after September 6, but did not think it was, — could not swear it was not.

Barnabas D. Capen testified that he had formerly owned Drake's land; that he examined the path the plaintiff cut, and thought a part of it was on Drake's land; that the path was a footpath; that no trees were cut, and only a few sprouts; that the damage would not exceed twenty-five cents; that the path was cut through a brush pasture; that he thought he could carry off all the plaintiff cut down in his arms at one time; and that the plaintiff the day after the cutting called upon the witness to find out where the defendant's line was.

Upon these facts, the judge ruled that the action could not be maintained, and ordered the jury to return a verdict for the defendant. If the ruling was right, judgment was to be entered on the verdict; otherwise, a new trial to be granted.

*T. E. Grover*, for the plaintiff.

*J. Everett*, for the defendant.

FIELD, J. The defendant made a complaint before a trial justice against the plaintiff, under the Pub. Sts. c. 203, § 94, on which the plaintiff was arrested, and, after an examination by the trial justice, was discharged. This section of the Public Statutes is a reënactment of the Gen. Sts. c. 161, § 81, as

amended by the St. of 1868, c. 321, § 1.  By § 2 of the latter statute, jurisdiction to punish this offence was given to trial justices concurrently with the Superior Court, " when the value of the property cut, . . . . or the injury occasioned by the trespass, is not alleged to exceed the sum of one hundred dollars." It seems that, by the Pub. Sts. c. 155, § 51, this grant of jurisdiction to trial justices over offences under this section of the statutes was omitted, and that, since the Public Statutes took effect, they have jurisdiction only to commit or bind over for trial in the Superior Court those who, on complaint, appear to be guilty of offences under this section.   But this change in the law is immaterial.  A discharge by the trial justice is an end of the prosecution, and the prosecution was before a court having some jurisdiction over the offence.  *Sayles* v. *Briggs*, 4 Met. 421, 426. *Cardival* v. *Smith*, 109 Mass. 158.  *Driggs* v. *Burton*, 44 Vt. 124.   *Fay* v. *O'Neill*, 36 N. Y. 11.

There was evidence for the jury that the complaint was prosecuted without probable cause, and with malice.

*New trial granted.*