R. O. Rogers et al. v. J. J. Mullins.

Decided May 1, 1901.

**1.—Malicious Prosecution—Ending of Prosecution.**

In an action for malicious prosecution plaintiff must allege and prove that the criminal prosecution upon which the action is based has ended.

**2.—Same—Discharge by Committing Magistrate.**

Where, in a case of ordinary felony, the committing magistrate discharges the accused, and it does not appear that the discharge was improperly procured, or that a subsequent indictment or prosecution for the same offense has been instituted, such discharge will constitute an ending of the prosecution such as will sustain an action for malicious prosecution by the accused.

**3.—Same—Good Faith of Defendant.**

In an action for malicious prosecution the fact that defendant, in making the complaint at the request of the county attorney, gave such attorney a full and fair statement of all he knew of the matters on which the criminal prosecution was based, constitutes a perfect defense; but it is otherwise where defendant failed to disclose to such attorney facts which he must have known were relevant and material.

Appeal from Shackelford. Tried below before Hon. N. R. Lindsey.

*Warren & Webb* and *J. A. King,* for appellants.

*A. A. Clarke* and *Dalton & Britton,* for appellee.

CONNER, CHIEF JUSTICE.—This suit is a suit for damages for malicious prosecution, instituted by appellee against appellants October 23, 1900, based upon complaint sworn to by appellant Rogers alone, and filed with a committing magistrate of Shackelford County, September 4, 1900, charging appellee and another with theft of cattle. It was alleged that warrant had been issued and appellee arrested by virtue thereof; that appellee had given bail for his appearance before said magistrate on September 10th, upon which day the magistrate discharged appellee, and "said false and malicious prosecution was by said justice dismissed." Appellants having answered, a trial was had November 24, 1900, before the court without a jury, which resulted in a judgment for appellee against both appellants for the sum of $527, from which this appeal has been prosecuted.

In the first and second assignments of error it is insisted that the court erred in overruling appellants' demurrer to the petition, and in rendering judgment for appellee, for the reason that it is not alleged, and the proof fails to show, that the prosecution upon which the action is based was ended. Upon the trial it appeared that in accordance with articles 335, 336 and 337 of our Code of Criminal Procedure, the magistrate, after the discharge of appellee as alleged, had certified and transmitted the proceedings in the criminal prosecution of appellee to the District Court, and that the grand jury impaneled in the latter court then had such proceedings and criminal charge under consideration and undisposed of. The question presented is one of first impression in this State, so far as we are advised. That an ending of the criminal prosecution must be alleged and proven by a plaintiff in this character of suit is well settled. Griffin v. Chubb, 7 Texas, 604, 58 Am. Dec., 85; Glassgow v. Owen, 69 Texas, 171; Abb. Tr. Ev., p. 654; 2 Greenl. on Ev., 15 ed., sec. 452. But the authorities seem to be somewhat conflicting upon what shall be considered an ending of the criminal prosecution. Thus, it was held in Walker v. Martin, 43 Illinois, 508, where one charged with an offense had been held to bail by a committing magistrate for his appearance to answer before the proper grand jury, and where the accused party sued out a writ of habeas corpus and was discharged, that such discharge on habeas corpus hearing was not an ending of the prosecution. Mr. Greenleaf says in the section cited above: "* * * It is not enough that the indictment was ended by the entry of a nolle prosequi. * * * If the party has been arrested and bound over on a criminal charge, but the grand jury did not find a bill against him, proof of this fact is not enough, without also showing that he has been regularly discharged by order of the court; for the court may have power to detain him for good cause until a further charge is preferred for the same offense. But in other cases the return of ignoramus on the bill by the grand jury has been deemed sufficient." Van Koehring v. Witte, 15 Texas Civ. App., 646. Other cases might be cited, but, without undertaking to quote them, or to note in detail the distinctions made, we

conclude that where the committing magistrate discharges the accused person, as he has authority to do under our statute in cases of ordinary felony (Code Criminal Procedure, article 296), and it does not appear that such discharge was improperly procured, or that a subsequent indictment or prosecution for the same offense has been instituted, such discharge will constitute such an ending of the criminal proceedings as will be sufficient in cases of the kind before us.    Dreyfus v. Aul (Neb.), 45 N. W. Rep., 282; Moyle v. Drake, 141 Mass., 238; Driggs v. Burton, 44 Vt., 125.    See also Sayles v. Briggs, 4 Metc. (Mass.), 421; Secor v. Babcock, 2 Johns., 204; and Cooley on Torts, pp. 215, 216.

The sufficiency of the evidence to sustain the verdict is also questioned by appellants, who are here separately represented.    The evidence shows, briefly, that appellant Arthur claimed to own a ranch of some 2000 acres and certain cattle situated in Midland County.    Through the intermediation of appellee, Mullen, one Bud Chance contracted to purchase the same, which appellee testifies was to be examined before the delivery of the notes and transfers made in furtherance of the transaction.    Chance and Mullen on their way to Midland drove from Chance's home, in Young County, o Albany, in Shackleford County, the home of Arthur, forty head of cattle, which appellee testifies were delivered to Arthur to hold and pasture until the examination of the Midland property, when, if the same was found as represented, said cattle were to be sold, and the proceeds applied in the payment pro tanto of the consideration to be paid by Chance on said pasture.    Appellee and Chance returned from Midland, and on September 1st resumed posssession of the cattle, after which, on the same day, Arthur sold and duly conveyed the same to Rogers, with whom, among others, Arthur had been negotiating for several days.    Chance and appellee insisted that they found no property in Midland as sold to Chance, and that the cattle had not been sold to Arthur, and, so insisting, on September 3d drove the cattle away. Rogers was without knowledge at the date of his purchase that Arthur's title to the cattle was questioned, or that said cattle were then in possession of Chance and appellee, and was so without knowledge on September 4th, when he made complaint at the request of Mr. King, the county attorney, who had sent for him for that purpose after a conference with Arthur. There is no evidence of malice on the part of Rogers, who, it appears, in good faith made a full and fair statement of all he knew of the matter to the county attorney, which, as has been expressly held in this State, constitutes as to him a perfect defense.    Sebastain v. Cheney, 86 Texas, 497.    See also Schippel v. Norton, 38 Kan., 567, 16 Pac. Rep., 804; 2 Greenl. on Ev., 15 ed., sec. 453; Abb. Tr. Ev., p. 652; 2 Rice on Ev., p. 1063; Young v. Jackson (Texas Civ. App.), 29 S. W. Rep., 1111.

We have been unable to say so much for appellant Arthur.    While the evidence would seem to have authorized a finding in his favor that he in fact owned the Midland property as represented, and had pur

chased the cattle as he testified, yet the testimony of appellee tended to a contrary conclusion, and there was evidence that Arthur, Mullen, and Chance had several controversies over the matter, out of which it may be reasonably inferred that some resentment on Arthur's part sprang up; and it is undisputed that Arthur first complained to the county attorney, thus in fact originating the prosecution against appellee. The evidence further fails to show that Arthur made full statement to the county attorney. Arthur testified: "I went to J. A. King, county attorney, and told him that plaintiff and Chance had taken off Rogers' cattle, and of the payment of the money, and told the contract [for the sale of the cattle] and the receipt was in Webb & Hill's office, and explained to him the terms thereof, and told him of the sale of the cattle by me to R. O. Rogers. Mr. King then sent for Mr. Rogers and asked him about it, and he (King) wrote out the complaint, and had Mr. Rogers to sign it. I had nothing to do with the prosecution, further than above stated. I was away from home on the 10th, the day of the examining trial. I believed when I sold the cattle that they were mine, and I believe so yet: I did not tell King about there being a dispute as to the cattle. I didn't tell him about Mullen's saying I had no right to sell them, or that the parties were in possession of the cattle when I sold them to Rogers, because I did not think it important." If Arthur possessed the intelligence and knowledge of the average Texas citizen as to the elements of theft of cattle, and of which the court who heard his testimony was the judge, the importance of the facts so withheld from the county attorney could scarcely have escaped his attention. At least, upon the entire evidence, we feel unable to say that the court was in error in holding adversely upon the material points in his evidence.

Without further discussion, we conclude that the evidence fails to sustain the verdict and judgment as to appellant Rogers, and that as to him the judgment below should be reversed, and here rendered in his favor, but that as to appellant Arthur the judgment below should be affirmed, and it is so ordered.

*Affirmed in part.*
*Reversed and rendered in part.*