**RUST v. PAGE et al.**

No. 12710.

Court of Civil Appeals of Texas. Fort Worth.
July 2, 1932.

Rehearing Denied Sept. 24, 1932.

Marvin H. Brown & Son, of Fort Worth, for appellant.

Simpson, Brewster & Rogers, of Fort Worth, for appellees.

DUNKLIN, J.

On September 4, 1930, J. G. Page and his wife, Mrs. Frankie Mae Page, executed to the Automobile Finance Company their prom-

issory note in the sum of $380, payable in monthly installments of $38 each. That note was given for the purchase money of an automobile and at the same time a chattel mortgage was given to secure its payment. The Automobile Finance Company was a partnership, composed of E. A. Rust and W. P. Sheppard. Default in payment of some of the installments having been made, criminal proceedings were instituted in the county court at law No. 1 against Mrs. Frankie Page and J. G. Page by filing therein an "affidavit for Information," in the name and by the authority of the state of Texas, signed and sworn to by E. A. Rust, one of the members of the partnership firm of the Automobile Finance Company, alleged to be the owner and holder of the mortgage. That affidavit contained a recitation of the execution of the mortgage referred to above to secure the purchase price of the machine. The affidavit further alleged that while the mortgage remained unsatisfied J. G. and Mrs. Frankie Mae Page "unlawfully and wilfully upon demand of said mortgagee, failed and refused to notify the said mortgagee, who was then and there the holder of such mortgage, of the location of such automobile, against the peace and dignity of the State."

A second count in the affidavit contained the same recitals with respect to the execution of the chattel mortgage to secure the purchase price of the automobile, and concluded with the charge that J. G. and Mrs. Frankie Page did "while such mortgage remained unsatisfied, unlawfully and wilfully conceal the said automobile, against the peace and dignity of the State."

A third count in the affidavit contained the same allegations with respect to the execution of the chattel mortgage to secure the purchase price of the automobile and charged that while such mortgage remained unsatisfied the said J. G. and Mrs. Frankie Page "unlawfully and wilfully absented themselves from the county and did otherwise conceal themselves so that notice could not be given them, or either of them, against the peace and dignity of the State."

By article 1557, Rev. Criminal Statutes 1925 (Penal Code), as amended by the Forty-First Legislature, shown in the Acts of that Legislature, page 237, c. 102, § 1 (Vernon's Ann. P. C: art. 1557), each of the acts charged in that affidavit against J. G. and Mrs. Frankie Page is made a penal offense against the laws of the state, punishable by fine of not less than $10 nor more than $100, or by confinement in jail for not more than 60 days, or both.

The record does not show that any information was filed in behalf of the state by the district or county attorney, based upon that affidavit and charging Mr. and Mrs. Page with the penal offense prescribed in article 1557, except the recital thereof in the order of court dismissing that case; nor does the record show the issuance of any warrant for arrest of either J. G. and Mrs. Frankie Page as provided for in articles 413 to 415 of the Code of Criminal Procedure. But the record does show the following judgment rendered in the county court at law in which the affidavit had been filed:

"State of Texas v. Mrs. Frankie Page. No. 11281.

"In the County Court at Law No. 1, Tarrant County, Texas.

"On this, the 13th day of April, 1931, came on to be heard the above entitled and numbered cause, and a severance having been granted, the State and the defendant, Mrs. Frankie Page, announced ready for trial, selected a jury, and the defendant, Mrs. Frankie Page, pleaded not guilty. After the defendant had entered her plea, it appeared to the court from the testimony of the complaining witness, E. A. Rust, that the information and complaints are not supported by proper affidavit and that the affidavit was in blank and filled in later and should be quashed.

"It is therefore, ordered, adjudged and decreed by the court that the information and complaint be and the same is hereby quashed and the case against the defendant, Mrs. Frankie Page is finally dismissed."

After that judgment was rendered, Mrs. Frankie Page, joined by her husband, J. G. Page, instituted the suit now before us against E. A. Rust and W. P. Sheppard to recover damages for malicious prosecution of Mrs. Frankie Page. The petition sets out the execution of the note and chattel mortgage referred to above; the filing of the affidavit by defendant E. A. Rust and the disposition of the case so made against Mrs. Frankie Page; with further allegations that Mrs. Page was not guilty of the offenses charged against her, and that the defendant E. A. Rust knew she was innocent of those offenses, and that he filed the complaint with malice and without probable cause. Damages were claimed by Mrs. Frankie Page for alleged injury to her reputation, for mental suffering resulting from the humiliation by reason of those criminal proceedings, and also for injuries to her health. The amount claimed by plaintiff was $30,000 for actual damages and $20,000 for exemplary damages.

Defendant W. P. Sheppard filed a plea in abatement of the suit as to him, and also a general demurrer and a general denial.

Defendant E. A. Rust filed an answer, consisting of a general demurrer and a general denial. The general demurrer so alleged by him was overruled; and the case went to trial before a jury, who returned a verdict in answer to special issues as follows:

"1. Do you find from a preponderance of the evidence in this case that the complaint in question was filed by the defendant E. A. Rust upon the advice of the assistant District Attorney, Mr. McGregor, after the said Rust had made a full and fair statement of the facts shown to the said E. A. Rust at that time?

"Answer: No.

"2. If you have answered special issue No. 1 above 'yes,' then you need not answer this question, but if you have answered the same 'no,' then you will answer this question:

"Question: Do you find from a preponderance of the evidence that the defendant E. A. Rust acted without 'probable cause,' as that term is defined for you below, in filing the complaint in question in this case?

"By the term 'probable cause' as used above is meant the existence of such facts and circumstances as would excite the belief in a person of a reasonable mind, acting on the facts or circumstances within his knowledge, that the person charged by him was guilty of the charge with which she was charged.

"Answer: Yes.

"3. If you have answered special issue No. 1 'yes,' then you need not answer this question, but if you have answered the same 'no,' then answer this question:

"Question: Do you find from a preponderance of the evidence that the defendant E. A. Rust acted with malice, as that term is defined for you below, in filing the complaint in question?

"By the term 'malice' as used above is not necessarily meant personal ill will, but a wrongful act, knowingly and intentionally done, without reasonable cause.

"Answer: Yes.

"4. Question: Do you find from a preponderance of the evidence that there existed between the defendant E. A. Rust and the defendant Sheppard an agreement between themselves to carry on the business of the Automobile Finance Company with a view of sharing as between themselves in the profits, if any, in said business?

"Answer: Yes.

"5. Question: Do you find from a preponderance of the evidence that the defendant E. A. Rust has abandoned any intention on his part of further prosecuting the criminal case against the plaintiff, Mrs. Page?

"Answer: Yes.

"6. Question: Do you find and believe from the evidence that the plaintiff, Mrs. Page, sustained any actual damage by reason of having been named in the complaint which was filed against her?

"Answer: Yes.

"7. If you answer special issue No. 6 'no', then you need not answer this question, but if you have answered the same 'yes,' then answer:

"Question: How much damages, if any, do you find and believe from the evidence that the plaintiff, Mrs. Page, has suffered as a direct and proximate result of having been named in the complaint which was filed against her?

"In answering this question, the court instructs you that you may allow the plaintiff, Mrs. Page, such a sum of money, if any, as if paid now in cash, you find and believe from the evidence will reasonably and fairly compensate her for any mental anguish, if any, or humiliation, if any, or impairment of reputation, if any, or impairment of health, if any.

"Answer: $10,000.00.

"8. If you have answered special issue No. 6 'no' then you need not answer this question, but if you have answered the same 'yes,' then answer this question:

"Question: Do you find and believe from a preponderance of the evidence that any amount of exemplary damages should be assessed against the defendant in this case?

"As an aid or guide to you in answering the above question, the court instructs you that exemplary damages are damages which may be allowed by the jury where a party has acted with malice, if any.

"Answer: Yes.

"9. If you have answered No. 8 'no', then you need not answer this question, but if 'yes', then answer:

"Question: What amount of exemplary damages, if any, do you find should be assessed against the defendant in this case?

"Answer: $5,000.00."

Judgment was rendered in favor of the plaintiffs against the defendants E. A. Rust and W. P. Sheppard jointly and severally for the sum of $15,000; but later and upon a hearing of a motion for new trial by the defendants, the court changed the original judgment by an order reading as follows:

"But the court, after the hearing of the motion for new trial was of the further opinion that the verdict and judgment heretofore entered in this cause were excessive in the sum of ten thousand dollars and required a remittitur of such amount, and the plaintiffs, Frankie Page and J. G. Page, having filed a remittitur in such amount, the court is of the opinion that the plaintiffs, Frankie Page and J. G. Page, should have and recover of and from the defendant, E. A. Rust, the sum of five thousand dollars. And the court is of the further opinion that the plaintiffs, Frankie Page and J. G. Page, should take nothing against the defendant, W. P. Sheppard, and that he should go hence without day and recover his costs in this behalf expended.

941

"It is therefore ordered, adjudged and decreed by the court that the plaintiffs, Mrs. Frankie Page and J. G. Page do have and recover of and from the defendant, E. A. Rust, the sum of five thousand dollars, together with interest thereon at the rate of six per cent. per annum from and after this date until said sum is paid, for all of which let execution issue.

"It is further ordered, adjudged and decreed by the court that the plaintiffs, Mrs. Frankie Page and J. G. Page, take nothing from the defendant, W. P. Sheppard, and that said defendant go hence without day and recover his costs."

No complaint has been made of the judgment in favor of defendant Sheppard and the suit as against him will not be further noticed. From the judgment so rendered defendant Rust has prosecuted this appeal.

Copies of the affidavit filed by defendant E. A. Rust and of the judgment rendered by the county court dismissing the case against Mrs. Frankie Page were attached to plaintiffs' petition as exhibits and as a primary basis for plaintiffs' suit, followed by allegations of innocence of the charge so made and of malice on the part of defendant in making them, and of physical and mental suffering sustained by the plaintiffs as a result of those proceedings, and for which damages were claimed.

In support of the assignment of error to the action of the trial court in overruling the defendant's general demurrer to the plaintiffs' petition, appellant has submitted the following proposition: "We gather, from the decisions, that a plaintiff cannot make a prima facie case of malicious prosecution against a defendant, unless he alleges (1) that the defendant has prosecuted him for the alleged commission of a crime, (2) that he is not guilty, (3) that the prosecution has finally terminated in his favor, (4) that the prosecution was done without probable cause, and was instituted maliciously, and (5) showing actual damages resulting to the plaintiff."

■ It is argued that one of the necessary elements of plaintiff's case is lacking, in that, as shown by the allegations in the petition, plaintiff has never been acquitted of the offenses with which she was charged, but that the proceedings were merely quashed upon the ground that "the information and complaints are not supported by proper affidavit and that the affidavit was in blank and filled in later and should be quashed," citing the case of American Motors Finance Co. v. Cleckler (Tex. Civ. App.) 28 S.W.(2d) 274, and several other decisions such as Von Koehring v. Witte, 15 Tex. Civ. App. 646, 40 S. W. 63 (writ refused), and Reed v. Lindley (Tex. Civ. App.) 240 S. W. 348. In some of those decisions it appeared that the criminal cases filed had never been tried or disposed of in any

manner; and the statement was made that one of the essentials necessary to be shown in a civil suit for malicious prosecution is that plaintiff had been acquitted of the criminal charge against him. But in those decisions it is apparent that acquittals were referred to as evidence of a termination of the criminal proceedings, and the opinions indicate that if terminated in any other manner that would be sufficient. The meaning is evident from the following quotation from Glasgow v. Owen, 69 Tex. 167, 6 S. W. 527, 531: "The defendant asked the court to instruct the jury that plaintiff could not recover unless the evidence showed that the prosecution was at an end. The refusal of this charge is assigned as error. The cause of action is not complete until the prosecution has ended. It could not be known whether there was any injury or not until there was an acquittal of the charge, nor what the extent of the injury might be. The suit cannot be maintained at all if there is a final conviction. To maintain the action, it must be shown that there was a prosecution; that it was malicious; that it was without probable cause; and that the prosecution is at an end." Citing cases.

It is manifest that the order of the county court dismissing the criminal case against Mrs. Frankie Page was a final termination of the prosecution that had been initiated by the appellant E. A. Rust. A new complaint and information would have been necessary to a further prosecution for the same offense, even though it could be said that the order made by the county court after hearing the evidence would not have been a bar to another prosecution on the defense of former jeopardy. The following decisions amply support this conclusion: Porter v. Martyn (Tex. Civ. App.) 32 S. W. 731, writ refused; Rogers v. Mullins, 26 Tex. Civ. App. 250, 63 S. W. 897; Graves v. Scott, 104 Va. 372, 51 S. E. 821, 2 L. R. A. (N. S.) 927, 113 Am. St. Rep. 1043, 7 Ann. Cas. 480.; Cominsky v. Breen, 7 Ill. App. 369; Moyle v. Drake, 141 Mass. 238, 6 N. E. 520; Robbins v. Robbins, 133 N. Y. 597, 30 N. E. 977; Equitable Life Assur. Soc. v. Lester (Tex. Civ. App.) 110 S. W. 499; Graves v. Dawson, 130 Mass. 78, 39 Am. Rep. 429; Suhre v. Kott (Tex. Civ. App.) 193 S. W. 417.

■ Nor do we believe that plaintiff's petition in this case was subject to a general demurrer, in that there was no allegation that any warrant was issued for the arrest of Mrs. Page prior to the hearing by the county court. It is a familiar rule that every reasonable intendment must be indulged in support of the sufficiency of the petition as against a general demurrer. The complaint made by Rust against Mrs. Page was sworn to before the assistant district attorney. Since the offense charged against Mrs. Page in that complaint was a misdemeanor, it was

the duty of the district attorney to file an information thereon in the justice court; and by article 34, Rev. Cr. Statutes (Code Cr. Proc.), it is made the duty of the justice of the peace to issue a warrant thereon for the arrest of Mrs. Page. Manifestly, the purpose of a warrant is to bring the defendant to trial before the proper tribunal, and as against a general demurrer we believe the presumption should be indulged that a warrant was issued for Mrs. Page before the hearing of the case in the county court, if it should be held that such a showing in plaintiff's petition was necessary. However, we believe that the same was not necessary. We do not believe that it was incumbent upon Mrs. Page after being charged with the penal offenses to await arrest upon a warrant, but that she had the right to waive such process and submit herself to the jurisdiction of the court without prejudice to her right to claim damages of the defendant if the prosecution was instituted without probable cause and with malice as his motive. We believe it well settled by the authorities that with respect to that issue it was sufficient to show that the filing of the complaint against Mrs. Page by the defendant E. A. Rust was the proximate and efficient cause of the prosecution against her in the county court and her trial therein for the offenses charged in the complaint. Defendant Rust having brought about the prosecution with the consequent injuries to Mrs. Page without probable cause and with malice, and having appeared and testified against her on the trial of the criminal case, he is in no position to escape responsibility therefor, on the ground that she did not incur a further humiliation by awaiting her arrest under a warrant before appearing in court and answering the charges made against her. We believe it clear that the filing of the complaint was the efficient and proximate cause of the criminal proceedings against Mrs. Page. 38 C. J. 386; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162.

Appellant insists that the court erred in overruling his request for a peremptory instruction on the ground that the plaintiff failed to make out her case by sufficient evidence to sustain a recovery for any amount. The statement of facts shows much testimony introduced by the parties on the issues made by the pleadings, and in briefs filed for appellant there is an extended discussion of the evidence in an effort to show that the peremptory instruction should have been given. However, appellee has pointed out much testimony which was ample to support the findings of the jury on the issues of liability of the defendant and for both actual and exemplary damages. It would unduly prolong this opinion to discuss such testimony at length, but we will refer only to a few outstanding facts testified to.

After the plaintiff Page had paid two or three installments on the car, he had several conversations with Rust looking to arrangements for meeting installments that were then delinquent; he then left for the East Texas oil fields, taking the automobile covered by the mortgage with him, but two or three days before leaving he informed Rust that he was going out of town for the purpose of trying to make some money to pay the delinquent installments on the note, and Rust made no objection thereto. Page did not tell his wife to what particular part of the oil fields he intended to go. He kept the car with him in East Texas until after the information had been filed against his wife and after he had heard that she had been arrested and that a warrant had also been issued for his arrest. During his absence from home the defendant Rust made repeated visits there demanding payment by Mrs. Page of the note and charging her with concealing the car and demanding that she tell him where it could be found. In reply to each of those demands Rust was informed by Mrs. Page that she did not know just where her husband had taken it, but that it was somewhere in the East Texas oil field. Rust then told her that he was going to beat her husband to death and throw her and her mother and sister in jail. Rust made repeated demands upon Mrs. Page to sell her household furniture for the purpose of paying off the note, the furniture being valued at about $3,000. To that end he took an auctioneer out to her home for the purpose of looking over the furniture with a view to selling it.

On the night before Rust filed the complaint against the plaintiffs he again went to Mrs. Page's house, where she was alone with her small child, and again demanded her furniture. On that visit he drove into her driveway, and after she had failed to comply with his demand for the furniture and as he was backing his car out of the driveway, Mrs. Page went out into the yard and begged him not to carry out his threat to put her and her mother and sister in jail, and she was so overcome with nervous shock that she fell to the ground in a faint; and he made no offer of assistance to her, notwithstanding that it was then raining hard and notwithstanding his wife, who was in the car with him, begged him to take Mrs. Page into the house.

Before the complaint was filed Rust took a Mr. Stubbs, a special investigator from the district attorney's office, out to question Mrs. Page, and when she reiterated denial of any knowledge of the whereabouts of the car, Rust told Stubbs that she was the biggest liar that he had ever seen. At no time during the several visits made by Rust to

Mrs. Page's home did she know where the car was, except that her husband had taken it to the East Texas oil fields, but she did not know his address.

The testimony of defendant Rust himself tended to show that he resorted to the criminal proceedings against Mrs. Page for the purpose of forcing her to bring back the car from East Texas to Fort Worth, and that after it was returned and possession thereof was recovered through a receiver appointed in a suit against Mr. and Mrs. Page to collect the debt and foreclose the mortgage, and after he had testified against Mrs. Page in the county court and the case had been dismissed, he decided not to prosecute her further since he had recovered possession of the car. Testimony introduced by plaintiff further showed that on the trial of the case in the county court there were several spectators present in addition to the jury, and according to her testimony, she was greatly humiliated by that trial and also by the proceedings leading thereto; by reason of all of which she had become such a nervous wreck that she had been unable to sleep and her health had been seriously impaired.

■ There is no merit in appellant's objection to the language used in special issue No. 1 as to whether or not the complaint against Mrs. Page was filed by the defendant upon the advice of the assistant district attorney "after the said Rust had made a full and fair statement of the facts known to the said E. A. Rust at that time"; the objection urged being that if the defendant Rust "in good faith" made a statement to the district attorney of the facts that were known to him, no further duty devolved upon him, but it was the duty of the district attorney to take the statement so made. The issue requested by the defendant on the same point was exactly the same, with the exception that it included the words "good faith" on the part of Rust in making the complaint. The element of good faith was necessarily involved in the language used in issue No. 1 "of full and fair statement of the facts known to said E. A. Rust at that time." Rogers v. Mullins, 26 Tex. Civ. App. 250, 63 S. W. 897, and decisions there cited; Missouri, K. & T. Railway Co. v. Groseclose (Tex. Civ. App.) 134 S. W. 736, writ refused; Bukowski v. Williams (Tex. Civ. App.) 198 S. W. 343.

■ Error has been assigned to the definition of "malice," given in the court's charge in connection with special issue No. 3, as meaning "a wrongful act knowingly and intentionally done without reasonable cause." As that charge was first written and before its submission to the jury, the words "just cause" were used instead of the words "reasonable cause." Defendant objected to the use of the words "just cause," on the ground that it was not a correct statement of the law and that instead of the word "just" the word "probable" should be used. Upon the objection so made the court changed the word "just" to the word "reasonable," making the definition read "without reasonable cause," and in that form it was given to the jury. After that change was made there was no further objection at that time, but it is insisted here that the use of the word "reasonable" instead of the word "probable" was reversible error.

We believe there is no substantial difference in the meaning of the two terms "reasonable" and "probable," and therefore this assignment is overruled. Speer on Law of Special Issues in Texas, § 568, p. 727; Stanford v. Grocery Co., 143 N. C. 419, 55 S. E. 815.

■ Since, as a matter of law, the dismissal by the county court of the criminal charge against Mrs. Frankie Page was necessarily a termination of that case, and in order for defendant to take further steps to prosecute her it would have been necessary for him to file a new complaint, the submission of special issue No. 5, presenting the inquiry whether or not the defendant had abandoned any intention to further prosecute the criminal case against Mrs. Page, was harmless, even if it should be said that the court erred in submitting it. Furthermore, the finding of the jury that Rust had abandoned any such intention conclusively put that matter at rest. See decisions in notes in 2 L. R. A. (N. S.) 928.

■ The record shows that the trial judge reached the conclusion that the remittitur of $10,000 of the damages originally allowed by the jury was sufficient to eliminate all excessive damages allowed; and in view of all the evidence we are unable to disturb that conclusion.

Numerous assignments of error to the admission of testimony will now be discussed.

■ The testimony of Mrs. Page, to the effect that on certain visits made by Rust to her home, referred to above, the defendant was demanding that she turn over to him her furniture and if she did not comply with that demand he was going to have her and her mother and sister put in jail, was admissible as tending to show malice; the objection thereto being that it was irrelevant, without proper basis in plaintiff's pleadings, and prejudicial to defendant. Her further testimony to the effect that by reason of the criminal prosecution against her she had been so embarrassed that she hated to put her head out of the door, that she had been made sick, that she sustained certain physical suffering, and her nerves were so upset that "the closing of a door is death to her,"

was admissible on the issue of damages claimed over defendant's objection that there was no pleading to warrant it and further objection to one of the questions eliciting the answer as being leading, although the question was reframed so as to eliminate its leading feature.

Nor do we believe that the court erred in admitting the testimony of Mrs. Page that she told the defendant everything she knew of the whereabouts of the car, over objection thereto that the question propounded in that form was leading and called for a conclusion; since the witness had already testified in detail as to what she had told the defendant, and we do not believe it was improper to inquire whether or not that embraced all. Her further testimony that when the auctioneer came and looked at her furniture, he told the defendant that she had no right to dispose of it since it belonged as much to her husband as to her, and defendant replied that he was not afraid to take it, was relevant to the issue of malice and was properly admitted over defendant's objection of irrelevancy to any issue in the case. We reach the same conclusion as to her further testimony that the defendant told her that he was going to do his best to beat her husband to death if he could. Although that testimony was brought out on cross-examination by defendant's counsel and was not strictly responsive to the question asked by defendant's counsel, yet there was no error in the refusal of the court to exclude it on that ground, since it was admissible on the issue of malice, and counsel for plaintiff objected to its exclusion because relevant to that issue. Furthermore, the trial judge qualified the bill of exception to the testimony with the notation that defendant did not move to exclude the testimony.

Dr. Brewster was a witness for plaintiff, and he testified that he examined Mrs. Page at her request, proceeding along the usual routes of questioning, and found her to be in a highly nervous condition. There was no error in overruling the objection to that testimony on the ground that there was no pleading to support it, since it was alleged in plaintiff's pleading that as a direct result of the criminal prosecution Mrs. Page had suffered severe mental anguish and her general health had been completely destroyed. Further testimony to a like effect was given by Dr. Brewster in answer to hypothetical questions, and the court overruled defendant's objection thereto, on the alleged ground that they did not lay a proper predicate for the testimony given by the witness, but without pointing out in what particulars the predicate was improper. Furthermore, the predicate so laid embodied numerous hypothetical conditions which the evidence tended to establish, and it was the province of the defendant to cross-examine the plaintiff on other hypothetical conditions not covered in the questions if he saw fit to do so.

Counsel for plaintiff propounded to defendant Rust this question: "Then when she followed you out in the back yard she (plaintiff) fainted and fell there in the rain and you drove off and left her, didn't you?" Defendant's objection to that question was sustained and the witness did not answer the question, but a bill of exception is presented here to the refusal of the court to instruct the jury not to consider this question. Mrs. Page had testified to the facts embodied in that question. There is no reversible error in that ruling. Complaint is made of the refusal of the court to permit the defendant, while being cross-examined by counsel for plaintiff, to testify that the assistant district attorney advised him that before filing the complaint he first take the county investigator to Mrs. Page's home and try to elicit from her information as to the location of the automobile; but as shown by the court's qualification of the bill of exception, defendant had already been permitted to testify fully to all the advice Mr. McGregor, the assistant district attorney, gave him before the complaint was filed.

Several assignments of error present the contention that counsel for plaintiff indulged in improper argument to the jury by reason of which a reversal should follow. The record shows that counsel for plaintiff agreed that defendant's counsel might take bills of exception to any portion of the argument without interrupting him during his argument, and all the exceptions thereto were taken after the conclusion of the argument. It would unduly prolong this opinion to set out the arguments complained of at length.

The argument shown in the sixteenth bill of exception was, in substance, that the defendant had resorted to the criminal procedure merely for the purpose of collecting the debt and not out of any sense of public duty, and that he also resorted to threats to put Mrs. Page and her mother and sister in jail. Defendant did not object to the argument on the ground that it was outside the record and prejudicial, which is the complaint here.

Another argument was, in substance, that if the defendant had caused injury to Mrs. Page's reputation and made a nervous wreck of her, then he ought to be made to pay therefor exemplary damages as well as actual damages, to the end that he will in the future refrain from jerking some other poor little woman out of her home and filing criminal cases against her. The bill of exception to the argument just referred to was qualified by the trial judge with the statement that the argument was not objected to

on the ground that it was outside the record and highly inflammatory and prejudicial to the defendant, which is the complaint made here. The court further concluded that the argument was a proper inference and deduction from the evidence.

In another argument counsel for plaintiff used this language: "There is nothing he can do now. He has taken away from her something that he cannot give back. Nothing that he can do can quiet the lips of the neighbors. Nothing that he can do can quiet the tongues of the enemies, and I say to you that after you get through with the actual damages, you ought to say to him, 'we are going to stop this kind of thing with you loan sharks,' these fellows that charge ten per cent commission and on top of that ten per cent interest, loan $300, and make you sign notes for $380.00. We are going to say to you and everybody else, when you start to file a complaint against a good woman, stop, stop, and be sure that she is guilty." The specific objection to that argument was that the reference to the defendant as a "loan shark" was improper and had no support in the evidence. The court instructed the jury that the reference made to the defendant by plaintiff's counsel as a "loan shark" was improper and with the further instruction to disregard the same and not to mention or discuss it for any purpose during their deliberations. And as shown by a further notation made by the trial judge to the bill of exception, the court was of the opinion that the rest of the argument quoted was a proper inference and deduction from the testimony in the case.

It was proven both by the testimony of defendant Rust and by the written applications for the loan in question, introduced by the defendant, that plaintiffs did not borrow but $300 from the defendants and that their note given for $380 included 10 per cent. commission to Rust for granting the loan and also 10 per cent. interest from date on the amount loaned; in addition to other incidental charges, including cost of insurance on the car. And Rust further testified that he and defendant Sheppard were partners, doing business under the firm name of "Automobile Insurance Company," the payee in the note. It is clear therefore that the statement of counsel that defendants had charged 10 per cent. commission on top of 10 per cent. interest was warranted by the evidence. It is also manifest that his designation of defendants as "loan sharks" had no other meaning than persons who would exact such terms from a borrower. Nor has counsel for appellant in their briefs here suggested any other meaning which in common parlance might have been imputed to those words by the jury.

Another argument made was this: "Now, gentlemen of the jury, the first thing that I want to call your attention to is the argument of Mr. Robertson, in which he said he had been called upon here to defend a man who was merely doing his duty as a good citizen in helping to enforce the law. I am glad that they took that position, because, gentlemen of the jury, after all is said and done, this case simply boils down to one proposition, and that proposition is this, that if you think that good woman that sits there ought to be on the county road, then you return a verdict for this defendant. If you do not think that she has any business on the county road, if you do not think that she is guilty of crime in connection with this transaction, then you ought to return a verdict for her."

The trial judge qualified the bill of exception to that argument with the statement that he did not consider that the same was outside the record and inflammatory and prejudicial to defendant's rights, and further that the same was in reply to argument of counsel for the defendant.

Another argument of plaintiff's counsel was to the effect that there was no merit in the contention that in swearing out the complaint against Mrs. Page, the defendant was merely trying to do his duty as a good citizen and was trying to enforce the law, since it was shown by his own testimony that after he got his car back he announced that he did not care to file another complaint. The bill of exception was qualified by the trial judge to the effect that the argument was in legitimate reply to argument of counsel for defendant.

Another argument of plaintiff's counsel was to the effect that if the jury should believe that plaintiff was not a good citizen, then they could say that the defendant did the right thing in having her prosecuted, but if they should think otherwise of Mrs. Page, then a verdict should be returned in her favor. That bill of exception was likewise qualified by the trial judge with the statement that it was not outside the record and that it was in reply to an argument made by defendant's counsel.

Another bill of exception was that counsel for plaintiff said in argument to the jury: "Go out there, gentlemen, and answer this first question 'No,' and answer that special issue that was given at the request of the defendant 'No,' and answer all the rest of them 'yes.' "

The trial judge qualified the bill of exception to that argument with the statement that the same was by way of a summary of counsel's previous argument on those issues, and that counsel for the defendant in his argument had told the jury that various issues submitted to them should be answered in the opposite way.

Another bill of exception showed the following argument made by plaintiff's counsel: "Men, do not go out here and return a verdict that will brand this good woman a criminal; return the kind of verdict that ought to be returned under the facts in this case, the kind of verdict that ought to be returned against a man that will act with malice, without probable cause, and won't tell the district attorney the truth and the whole truth about everything, and when you have done that, men, there won't be any kick about your verdict. I thank you." Defendant's objection was that it was outside the record, inflammatory, and prejudicial.

The trial judge qualified that bill with the statement that he considered the argument a proper reference and deduction from the testimony, and that it was not outside of the record.

We believe it apparent that none of the bills of exception to the several arguments, with the qualifications of some of them by the trial judge, show any reversible error.

For the reasons noted, all assignments of error are overruled and the judgment is affirmed.

### On Motion for Rehearing.

Bill of exception No. 16, taken by the defendant to the argument of Mr. Brewster, counsel for plaintiffs, and discussed in our opinion on original hearing, shows that one of the objections made thereto was that "such argument was outside of the record, highly inflammatory and prejudicial to the rights of the defendant and should not have been permitted." Our opinion contains the erroneous statement that that was not one of the grounds of objection, and the erroneous recital in our original opinion is herewith withdrawn. By way of explanation, we will add that the certificate of the trial judge approving the bill contained this statement by way of qualification:

"The court does not certify to the following language in the foregoing bill of exception:

" 'Such argument is outside of the record,' highly inflammatory and prejudicial to the rights of the defendant, and should not have been permitted.'

"The Court was of the opinion that such argument was proper inference and deduction from the evidence in this case."

Upon first impression, we concluded that that statement of the judge had the effect of eliminating from the bill that ground of objection; but we are now convinced that it had no other meaning than that the court concluded that the argument was not outside the record, but was a proper inference and deduction from the evidence.

However, we believe that the argument was a permissible inference to be drawn from the evidence and therefore the court did not err in overruling the objection.

After due consideration of the motion for rehearing, we adhere to all other conclusions embodied in our original opinion, and therefore the motion is overruled.