## ZELLO v. GLOVER.

### No. 4011.

Court of Civil Appeals of Texas. Amarillo.

April 26, 1933.

Cook, Smith, Teed, Sturgeon & Wade, of Pampa, for appellant.

W. M. Lewright, of Pampa, for appellee.

MARTIN, Justice.

A complaint was filed against appellant by appellee in justice court charging him with cattle theft. He gave bond in the sum of $1,000 for his personal appearance before the district court of Gray county then in session, to answer said charge. The grand jury at that term of court investigated this charge and "no billed" appellant. He thereupon filed this, a malicious prosecution suit, against appellee.

A general demurrer was sustained to his petition, and the action of the trial court in this respect is the only alleged error presented for review.

Appellee has filed no brief. Appellant asserts that the demurrer was sustained upon the belief by the trial court that a "no bill" by a grand jury was not such final termination of the prosecution in favor of the accused as would entitle him to maintain a malicious prosecution suit, since he could be thereafter prosecuted. Otherwise stated, that nothing less than a "termination" which prevented a future prosecution would meet the demand of the law.

Appellant in respect to this particular matter alleged that the grand jury of Gray county returned no bill of indictment against him and that he was fully discharged and released from said charge, complaint, and accusation; that his bondsmen and sureties upon his bail bond were likewise released; that no witness or witnesses ever testified that he was guilty of the offense charged against him; and that the accusation made against him by appellee was done maliciously and without probable cause.

This petition does not specifically allege that the trial court did not continue the prosecution against him until the next term of court, but, since we must indulge every reasonable intendment in favor of the pleadings as against a general demurrer, we think the allegations, the substance of which we have already stated, sufficiently showed that the prosecution ended with the discharge of the accused.

It is stated that the trial court was largely influenced by some of the language in Von Koehring v. Witte, 15 Tex. Civ. App. 646, 40 S. W. 63, 64. The facts of that case clearly distinguish it from the present one. It is therein stated that a federal grand jury, after once failing to indict "at the subsequent term, in November, upon the same papers," returned an indictment, and it appears that such indictment was pending at the time of the trial of the malicious prosecution suit. Plainly the facts of that case demanded the disposition made of it by the San Antonio court, and the language in the opinion to the effect that the prosecution must be disposed of in such a manner that it cannot be revived was not necessary to a decision of the question presented. Presumably the prosecution was continued in the federal court, probably under some provision similar to our Texas statute, to which we shall presently advert. Otherwise the indictment could not have been subsequently found, as stated therein, "upon the same papers."

■ It may be stated generally that the plaintiff, in order to maintain a suit for malicious prosecution, must show: (1) That there was a prosecution; (2) that it was malicious; (3) that it was without probable cause; and (4) that the prosecution is at an end and has terminated favorably to the accused. Glasgow v. Owen, 69 Tex. 167, 6 S. W. 527.

■ What constitutes a favorable termination to a prosecution is the question that we must answer on this appeal. The rule is stated, and we think correctly so, in 38 C. J. page 443, as follows: "A failure or refusal of the grand jury to indict, followed by the discharge of the accused, is in general a sufficient termination of the proceedings, although there may be no formal order of discharge by the court."

What is a "final termination" of the prosecution has recently been discussed by the Fort Worth court in the case of Rust v. Page (Tex. Civ. App.) 52 S.W.(2d) 937, 941. It is there stated: "It is manifest that the order of the county court dismissing the criminal case against Mrs. Frankie Page was a final termination of the prosecution that had been initiated by the appellant E. A. Rust. A new complaint and information would have been necessary to a further prosecution for the same offense, even though it could be said that the order made by the county court after hearing the evidence would not have been a bar to another prosecution on the defense of former jeopardy. The following decisions amply support this conclusion: Porter v. Martyn (Tex. Civ. App.) 32 S. W. 731, writ refused; Rogers v. Mullins, 26 Tex. Civ. App. 250, 63 S. W. 897; Graves v. Scott, 104 Va. 372, 51 S. E. 821, 2 L. R. A. (N. S.) 927, 113 Am. St. Rep. 1043, 7 Ann. Cas. 480; Comisky v. Breen, 7 Ill. App. 369; Moyle v. Drake,

141 Mass. 238, 6 N. E. 520; Robbins v. Robbins, 133 N. Y. 597, 30 N. E. 977; Equitable Life Assur. Soc. v. Lester (Tex. Civ. App.) 110 S. W. 499; Graves v. Dawson, 130 Mass. 78, 39 Am. Rep. 429; Suhre v. Kott (Tex. Civ. App.) 193 S. W. 417."

These quotations, we think, make a reversal of this case imperative, but, because it appears original in its facts, we lengthen this opinion to discuss briefly certain phases of the Texas law which seems to bear upon the solution of this question, and which we do not find has been heretofore adverted to in decisions upon the subject.

■ A portion of article 436, C. C. P., is as follows:

"The following causes, and no other, will exonerate the defendant and his sureties from liability upon the forfeiture taken: * * *

"4. Failure to present an indictment or information at the first term of the court which may be held after the principal has been admitted to bail, in case where the party was bound over before indictment or information, and the prosecution has not been continued by order of the court."

It has been definitely settled that the fact of a complaint having been filed against a witness charging him with a felony cannot be introduced to affect his credibility where sufficient time has elapsed for an indictment and none has been presented against him. Redding v. State, 95 Tex. Cr. R. 641, 255 S. W. 430, 431; Wright v. State, 63 Tex. Cr. R. 429, 140 S. W. 1105.

Judge Ramsey, in the case of Headly v. State, 58 Tex. Cr. R. 185, 125 S. W. 27, 28, uses this language: "If such accused was not then indicted, it would be assumed and presumed that no violation of law had been committed by him."

It follows by necessary implication from the above, we think, that an accused against whom no indictment has been returned and no continuance of his case ordered is exonerated and restitution made for the wrong done him as completely as the criminal courts may voluntarily do it. He has been absolved of all guilt and its consequences. That particular prosecution is at an end. Not only may he not be arrested again upon the same complaint, but it cannot even be referred to against him as an impeaching circumstance affecting his credibility. If no subsequent prosecution is commenced, it is thereafter "assumed and presumed that no violation of law had been committed by him."

But suppose we had neither precedent nor statute. Let us examine for a moment the question as a purely original one. A wantonly and falsely charges B with a heinous crime and procures his arrest and incarceration. A has no evidence whatever of guilt and produces none before the grand jury. That

body cannot indict B without violating its oath and prostituting itself. It completely exonerates B and discharges him from prison. B of course is powerless to compel the state to indict and try him so that he may be finally acquitted and thus secure the character of "termination" of prosecution which it is intimated is necessary in some of the decisions in order to get redress in a malicious prosecution suit. We are not able to believe that an enlightened and humane jurisprudence would deny B all redress against A because he had failed to do that which it was humanly impossible for him to accomplish. It seems clear to us that there is but one answer that can be made to. this question, whether it be decided upon precedent or legal principle. Protection of human rights has been the pride and glory of Anglo-Saxon jurisprudence. Its exaltation and guardianship of these through the centuries point the way to the solution of this question, if we had no other. As pointed out before, the criminal courts in such cases do all in their power to right the wrong, if any, done the accused under such circumstances. We cannot believe the civil courts ought to do less, when they are properly called upon.

The judgment will be reversed, and the cause remanded.